Maeve E. Cannon
STEVENS & LEE
510 Carnegie Center Drive, Suite 400
Princeton, New Jersey 08540
(609) 243-6423
maeve.cannon@stevenslee.com

Cara R. Burns (Pro Hac Vice to be Requested)
MIMS, KAPLAN, BURNS & GARRETSON
28202 Cabot Road, Suite 383
Laguna Niguel, California 92677
(310) 314-1721
cburns@hmkblawyers.com

Attorneys for Plaintiff,
Merch Traffic, LLC

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MERCH TRAFFIC, LLC,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**JOHN DOES 1-100, JANE DOES 1-100, and XYZ COMPANY,**<br><br>**Defendants.** | **ACTION NO. 2:26-cv- 3738 SRC-AME**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER, A SEIZURE ORDER, AND AN ORDER TO SHOW CAUSE REGARDING WHY A PRELIMINARY INJUNCTION AND SEIZURE ORDER SHOULD NOT ISSUE** |

# **TABLE OF CONTENTS**

I .    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . 2

III.    DEFENDANTS SHOULD BE ENJOINED FROM SELLING,
        DISTRIBUTING, AND MANUFACTURING INFRINGING
        MERCHANDISE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . 4

      A.    There Is A Reasonable Probability That Plaintiff Will Prevail On
             The Merits Because Defendants Have Violated Section 1125(a) . . . . . . . 4

      B.    There Is A Reasonable Probability That Plaintiff Will Prevail On
             The Merits Defendants Have Violated Section 1114. . . . . . . . . . . . . . . . 9

      C.    Plaintiff Will Suffer Irreparable Injury . . . . . . . . . . . . . . . . . . . . . . . . . .10

      D.    The Threatened Injury to Plaintiff Outweighs Potential Harm . . . . . . . . .11

      E.    The Public Interest Will Be Served By Issuance Of The Injunction. . . . 11

IV    PLAINTIFF IS ENTITLED TO EX PARTE RELIEF CONSISTING OF
A TEMPORARY RESTRAINING ORDER AND A SEIZURE ORDER . . . . . . . . . 12

      A.    An Injunction and Seizure Order Under the Lanham Act Is
             Necessary To Combat Defendants' Activities.. . . . . . . . . . . . . . . . . . . 12

      B.    Rule 65 of The Federal Rules Of Civil Procedure Provides
             Authority For The Ex Parte Relief Plaintiff Seeks  . . . . . . . . . . . . . . . .14

      C.    It Is Appropriate To Issue An Injunction And Seizure Order
             To Enjoin Activities Of Persons Whose Identities Are Presently
             Unknown . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

V.  A MULTIDISTRICT INJUNCTION AND SEIZURE ORDER ENJOINING
     DEFENDANTS' AT CONCERT VENUES IS BOTH NECESSARY
      AND PROPER TO PROVIDE COMPLETE RELIEF  . . . . . . . . . . . . . . . . . . . . .17

      A. Courts Have Issued Tour Injunctions and Seizure Orders.. . . . . . . . . . . . .17

B.  The Court Will Have Jurisdiction Over The Defendants and Those
     Acting In Concert With Them. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

C.  The Order Binds Those Who Participate in the Defendants'
     Unlawful Conduct Beyond the Territory of this Court. . . . . . . . . . . . . . . 25

D.  Defendants Have A Full And Fair Opportunity To Be Heard. . . . . . . . . . .26

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 26

# TABLE OF AUTHORITIES

<u>CASES</u>

*ACLU v. Reno,*
   217 F.3d 162 (3rd Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*AMF, Inc. v. Sleekcraft Boats,*
   599 F.2d 341 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Anderson v. Hooper,*
   498 F. Supp. 898 (D.N.M. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Babbitt v. United Farm Workers National Union,*
   442 U.S. 289 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bivens v. Six Unknown Names Agents of Federal Bureau of Narcotics,*
   403 U.S. 388, 91 S.Ct. 1999 (1971) . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . 15

*Brockum Co. v. Blaylock,*
   729 F.Supp. 438 (E.D. Pa. 1990) . . . . .. . . . . . . . . . . . . . . .. . . . . . . . . 4, 8

*Brockum Intern'l v. Various John Does,*
   551 F. Supp. 1054 (E.D. Wisc. 1982) . . . . .. . . . . . . . . . . . . . . . . .. . . . . . . . .20

*Brockum Co. v. Various John Does,*
   685 F. Supp. 476 (E.D. Pa. 1988) . . . . .. . . . . . . . . . . . . . . . . .. . . . . . .. . . 20

*Boston Athletic  v. Sullivan,*
   867 F.2d 22 (1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 8

*Corning Glass Works v. Jeannette Glass Co.,*
   308 F. Supp. 1321 (S.D.N.Y.), aff'd, 432 F.2d 784 (2d Cir 1970) . . . .. . . . . . .11

*ebay, Inc. V. MercExchange, L.L.C.,*
   547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed 2d 641 (2006) . . . . . . . . . . . . . . . . . . . . 10

*Flast v. Cohen,*
   392 U.S. 83 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Golden Door, Inc. v. Odisho,*
    437 F.Supp. 956  (N.D. CA 1977) , aff'd 646 F.2d 347 (9th Cir. 1980),
        overruled on other grounds. 287 F. 3d 866 (9th Cir. 2002). . . . . . . . . . . . . . . . 9, 18

*In re Google Play Store Antitrust Litigation,*
    147 F.4th 917 (9th Cir. 2025) . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . 21

*Hard Rock Cafe Licensing v. Pacific Graphics,*
    776 F. Supp. 1454  (W.D. Wash. 1991) . . . .. . . . . . . . . . . . . . . . . . . . . . . .10

*Joel  v. Does,*
    499 F. Supp. 791 (E.D. Wisc. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 16

*John Hancock Mutual Life Ins. Co. v. Central National Bank*
*in Chicago,*
    555 F. Supp. 1026 (N.D. Ill. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15, 22

*McGraw Edison Co. v. Performed Line Products,*
    362 F.2d 339 (9th Cir.) cert. denied, 385 U.S. 919 (1966) . . . . . . . . . . . . . . . . . . . .23

*Moon Records v. Does,*
    217 U.S.P.Q. 39 (N.D. Ill. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*New West Corp. v. NYM Co. of California, Inc.,*
    595 F.2d 1194  (9th Cir. 1979)         . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . 6, 9

*Nice Man Merchandising, Inc. v. Logocroft, Ltd.,*
    23 U.S.P.Q. 2d 1290 (E.D. Pa. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Nintendo of America v. NTDEC,*
    822 F. Supp. 1462 (D. Ariz. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Ocean Bio-Chem, Inc. v. Turner Network Television,*
    741 F. Supp. 1546 (S.D.Fla.,1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . 6

*Plant v. Does,*
    19 F. Supp.2d 1316 (S.D. Fla. 1998) . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . 19, 20, 22

*R.H. Donnelley Corp. v. Illinois Bell Telephone,*
    595 F.Supp.1202 (N.D. Ill. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

4

*Scott Paper Co. v. Scott's Liquid Gold, Inc.*,
   589 F.2d 1225 (3d Cir.1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*SKS Merch, LLC v. Barry*,
   233 F. Supp. 2d 841  (E.D. Ky 2002) . . . . . . . . . . . . . . . . . 4, 7, 10, 15, 19, 20, 21, 22

*In Re Suicide Boy$ Trademark Litigation*,
   796 F. Supp. 3d 1310 (N.D. GA 2025). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*The Five Platters, Inc. v. Purdie*,
   419 F. Supp. 372 (D. Md. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . .19

*Trump v Casa, Inc.*,
   606 U.S. 831 (2025) . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . 21

*Universal City Studios, v. Kamma Industries*,
   217 U.S.D.Q. 1162 (S.D. Tex. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Vuitton et Fils, S.A.*,
   606 F.2d 1   (2d Cir. 1979) . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . .12,14,15

*Vuitton, Et Fils, S.A. v. Carousel Handbags*,
   362 F.2d 339 (9th Cir. 1979)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Waffenschmidt v. Mackay*,
   763 F. 2d 711 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Winterland Concessions Co. v. Sileo*,
   528 F.Supp. 1201 (N.D. Ill. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*World Wrestling v. Unidentified Parties*,
   770 F. 3d 1143 (5th Cir 2014)   . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . 20

<u>STATUTES</u>

15 U.S.C. § 1051. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

15 U.S.C. § 1114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

15 U.S.C. § 1116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 18, 20, 21, 22

15 U.S.C. § 1125 (a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

15 U.S.C. §1127 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1651 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

Fed. R. Civ. P. Rule 4    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 22

Fed. R. Civ. P. Rule 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 11, 14, 15, 19, 23

# I . __INTRODUCTION.__

Plaintiff Merch Traffic, LLC ("Plaintiff") submits this Memorandum in support of its Ex Parte Application for: a Temporary Restraining Order; a Seizure Order; and an Order to Show Cause Regarding Why A Preliminary Injunction and Seizure Order Should Not Issue (the "Order").  Plaintiff seeks this Order to stop the sale at concerts of unauthorized merchandise which bears the federally registered trademarks, services marks, likenesses, logos, and/or other indicia of the popular musical group "BRUCE SPRINGSTEEN & THE E STREET BAND"  or its individual band member "BRUCE SPRINGSTEEN" or the group "E STREET BAND" (all collectively, the "Group") and to seize the same here at their concert on April 20, 2026 at the Prudential Center in Newark, New Jersey, and thereafter at other venues on the tour.  The tour has begun and so have the Defendant Bootleggers' infringing activities.  See Holt Decl., ¶¶ 10-13 Exhibits C-E thereto.

Similar orders have been granted by this and other District Courts to this and other performers.[1]   For the reasons stated below, such relief is warranted under the

---

[1] See Certificate of Counsel of Cara Burns ("Burns Cert.") filed concurrently herewith ¶ 6 and its Exhibits, including: Bravado v. Does, Case No. 09-cv-942 SRC (D. NJ 2009) (Judge Chesler) (for Nickelback's tour);  Merch Traffic v. Does, Case No. 25-cv-13960 KSH (D. NJ 2025) (Judge Hayden) (for Jonas Brothers' tour); and Bravado v. Does, Case No. 25-cv-6020 MCA (D. NJ 2025) (Judge Arleo) (for The Weeknd's tour), among others and for this Group: Merch Traffic, LLC v. Does, Case No 23-cv-2459 (S.D.NY 2023) (Judge Abrams) (for Bruce Springsteen & the E Street Band's tour); amd Live Nation v. Does, Case No 16-cv-0336 (S.D.NY 2016) (Judge Kaplan) (for Bruce Springsteen & the E Street Band's tour).among others.

Lanham Act § 1051 et seq., F.R.C.P. Rule 65, and the All Writs Act, 28 U.S.C. § 1651.

## II.    STATEMENT OF FACTS.

On Monday, April 20, 2026 at the Prudential Center in Newark, New Jersey, the Group will perform.  See Holt Decl., Exhibit A thereto. Defendants currently identified as Does, also referred to as "Bootleggers," are currently engaged in the manufacture, distribution and sale of unauthorized T-Shirts and other merchandise that bear the federally registered trademarks[2], service marks, likenesses, logos and other indicia of the Group ("Infringing Merchandise") to do so at the concert in this District and at other sites on the Group's tour. Holt Decl. ¶¶ 8-20.  See generally Burns Cert.

To combat this on the Group's prior tours, and on tours by other popular performers, Plaintiff has obtained from this and other District Courts temporary restraining and seizure orders, and thereafter seizure orders to continue to seize the

---

[2] The Group has obtained US Federal Registrations for their "BRUCE SPRINGSTEEN & THE E STREET BAND" trademark: Registration No. 1697409 for use in connection with IC 41, entertainment services and IC 009 recordings. Also federally registered are the trademarks "BRUCE SPRINGSTEEN" Registration No. 4454482 for use in connection with IC 025 clothing, IC 16 paper products, and other goods and services, and "E STREET BAND" Registration No. 4465269 for use in connection with: IC 025 clothing, IC 016 paper products and other goods and services. All three trademarks are incontestable.  See Declaration of Emily Holt ("Holt Decl."), filed concurrently herewith, ¶ 5.

unlawful merchandise of such defendants at a performer's concerts. See Footnote 2, supra, Burns Cert. ¶ 6, Exhibits thereto and Holt Declaration.

Plaintiff easily meets the required showing and there is no defense to the claims brought by Plaintiff. Plaintiff is the exclusive licensee of the Group's Trademarks, and the sole merchandiser for authorized tour merchandise which will be sold during their tour. Holt Decl. ¶ 2. Plaintiff has therefore demonstrated a substantial likelihood that it will succeed on the merits. The Infringing Merchandise harms Plaintiff and the public in numerous ways. Each sale of Infringing Merchandise by Defendants is an irrecoverably lost sale for Plaintiff. Absent the relief requested herein, Plaintiff's monetary losses would be substantial. Moreover, the loss and damage to the goodwill of Plaintiff and the Group through the distribution of inferior merchandise which will be seen as associated with them, cannot be calculated or remedied. Holt Decl. ¶¶ 10-27; Burns Cert. ¶¶ 6-24.

The public interest will be served by issuance of the relief requested. The public interest favors the protection of contractual rights. There is no potential harm to any legitimate interest of Defendants if the requested relief is issued. Further, the relief requested here is the only proven method of protecting Plaintiff's rights and the public from inferior merchandise which bears a false designation of origin and created and sold by the Defendants, who are accountable to no one for payment of royalties, sales taxes, or for quality control. Holt Decl. ¶¶ 8-20.

The need for an ex parte order is manifestly evident. Defendants' actions are completely unauthorized, and Defendants have both the means and motivation to destroy vital evidence before a noticed hearing and avoid service. Similar orders have been obtained to protect the rights of merchandisers and distributors thereon against bootleggers and their unauthorized, infringing merchandise. In response to these orders by Plaintiff, although thousands of bootleggers have been served, defendant bootleggers do not appear since apparently they know their activities are unlicensed and unlawful. See Burns Cert. Accordingly, Plaintiff requests that this Court issue the requested order.

III. **DEFENDANTS SHOULD BE ENJOINED FROM SELLING, DISTRIBUTING AND MANUFACTURING INFRINGING MERCHANDISE.**

A court accesses the following factors to determine whether a motion for a preliminary injunction will be granted: (1) whether there is a reasonable probability the movant will succeed on the merits; (2) whether denial of relief will result in irreparable harm to the movant; (3) whether granting relief will result in greater harm to the non-movant; and (4) whether granting the relief will be in the public interest. ACLU v. Reno, 217 F.3d 162, 172 (3rd Cir. 2000). Plaintiff meets all four factors.

A. **There Is A Reasonable Probability That Plaintiff Will Prevail On The Merits Because Defendants Have Violated Section 1125(a).**

Courts have repeatedly held that the use of registered and unregistered names,

4

images and logos of musical artists by bootleggers causes irreparable injury and violates section 43(a) of the Lanham Act. Brockum Co. v. Blaylock, 729 F. Supp. 438, 444 (E.D. Pa. 1990) (there is no necessity under §43(a) that the marks in question be registered); SKS Merch, LLC v. Barry, 233 F. Supp. 2d 841, 853-854 (E.D. Ky 2002) (sales by Doe Defendant Bootleggers of merchandise bearing the unregistered marks of the artist Toby Keith violates section 1125 (a) and a seizure order good for all of the performer's concerts was issued); Winterland Concessions Co. v. Sileo, 528 F. Supp. 1201 (N.D. Ill. 1981), mod. on other grounds, 735 F.2d 257 (7th Cir. 1984); Nice Man Merchandising, Inc. v. Logocroft, Ltd., 23 U.S.P.Q. 2d 1290 (E.D. Pa. 1992) (use of the names, trademarks, logos and likenesses of performers on defendants' merchandise without permission from plaintiff merchandiser "is likely to cause confusion, to cause mistake and to deceive. Such confusion and/or deception will continue to result in immediate and irreparable injury to plaintiff.")

The purpose of the Lanham Act is "to protect persons engaged in . . . commerce against unfair competition" and "to prevent fraud and deception in such commerce." 15 U.S.C. §1127. This broad prohibition against "unfair competition" covers not only confusion as to source or sponsorship between Defendants' Infringing Merchandise and Plaintiff's authorized merchandise, it also prohibits the misappropriation of the efforts of others. See R.H. Donnelly Corp. v. Illinois Bell

5

Tel., 595 F.Supp.1202, 1206 (N.D. Ill. 1984) ("those who invest time, money and energy into the development of a product and its accompanying good will should be allowed to reap the advantages of their investment");  Boston Athletic v. Sullivan, 867F.2d 22, 33(1st Cir.1989) ("a party cannot reap where it has not sown").

To establish a violation of section 43(a) "a plaintiff must demonstrate (1) that it is the owner of the trademark, and (2) that the defendant adopted a trademark that is the same or confusingly similar, so that consumers likely will be confused about the proper origin of the goods or services, such that a consumer is likely to believe that defendant's goods or services are being sold with the consent or authorization of the plaintiff, or that defendant is affiliated with or connected to the plaintiff." Ocean Bio-Chem, Inc., v. Turner Network Television, Inc, 741 F. Supp. 1546, 1554 (S.D. Fla 1990) (citation omitted); New West Corp. v. NYM Co. of California, Inc., 595 F.2d 1194, 1201 (9th Cir. 1979) (for purposes of injunctive relief, it is not necessary to show actual confusion or deception, but merely the likelihood of such). These elements are clearly present here. Merchandise are goods, the Defendants' activities effect the sale of Plaintiff's merchandise during the concerts and, because of their use of Plaintiff's marks, there is the false designation which is likely to confuse.

The Third Circuit has identified various factors to consider when determining whether a likelihood of confusion exists: (1) the similarity of the marks; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative

6

of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods are marketed or advertised through the same channels; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers; and (10) other factors suggesting that the consuming public might expect the owner to manufacture both products, or manufacture a product in the defendant's market, or expect that the owner is likely to expand into the defendant's market.  Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225, 1229 (3d Cir.1978).

Judged by these factors, Defendants' have violated the Lanham Act and there is no defense to the Defendants' use of the Group's Trademarks. The Group's Trademarks are strong marks, known to millions of consumers. Defendants are using the same exact marks as Plaintiff and selling their unlawful products at the concerts. Using the traditional scale of marks from generic to arbitrary, the Group's Trademarks are arbitrary in that they do not describe the goods to which they are attached but instead provide identification, thus they have acquired secondary meaning. Defendant Bootleggers will be copying the Group's Trademarks, therefore there is no doubt as to consumer confusion.  Holt Decl. ¶¶ 11-22. Since Defendants are aware of the Group's use of their trademarks, service marks, etc., there is a

7

presumption of bad faith. See AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 354 (9th Cir. 1979) (deception may be presumed from the knowing adoption of a similar mark).

It is clear that the sale of bootleg infringing merchandise bearing the trademarks, service marks, logos and other indicia of well-known performers constitutes a violation of §43(a) of the Lanham Act. SKS Merch, supra, Nice Man Merchandising, 23 U.S.P.Q. at 1292 ("the use of well-known performers' names and likenesses upon novelty merchandise without the performers' authorization constitutes a violation of § 43(a)"). As set forth by the District Court in Brockum Co. v. Blaylock:

> Defendant [Bootlegger] cannot obtain a "freeride" at the [exclusive licensee's] expense. Its shirts are designed to take advantage of the efforts and expenditures of the plaintiff and benefit from the goodwill associated with the Rolling Stones, their 1989 tour, and the promotion of the event created or undertaken by the plaintiff and the Rolling Stones. Such unlicensed use of the Rolling Stones' name would permit the defendant to reap where it had not sown. Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 33 (1st Cir. 1989). Defendant's argument that the T-shirt in question merely celebrates an "event" is circular reasoning, at best, given the fact that there would be no "event" to celebrate, were it not for the hard work and financial outlay provided by the plaintiff.

729 F. Supp. at 444.

Defendants have manufactured Infringing Merchandise for the sole purpose of selling it at the concerts. It is beyond dispute that Defendants have and will continue to knowingly utilize the Group's Trademarks to deceive the public and

create the appearance that Defendants' Infringing Merchandise is sponsored by or originated from Plaintiff, and Plaintiff has no control over the quality of the merchandise.  Defendants' sale of Infringing Merchandise is intended to "free ride" on the Group's Trademarks that have acquired value through the extensive efforts of the Plaintiff.  This is precisely the conduct Section 43(a) was designed to stop.

B. **There Is A Reasonable Probability That Plaintiff Will Prevail On The Merits Because Defendants Have Violated Section 1114.**

Under 15 U.S.C. § 1114, Plaintiff must show that Defendants have used the registered trademark:  (1) without consent; (2) in connection with the sales of goods; and (3) where such use was likely to cause confusion or to deceive purchasers as to the source or origin of the goods. Golden Door, Inc., v. Odisho, 437 F. Supp. 956, 962-63 (N.D. Cal. 1977), aff'd 646 F.2d 347 (9th Cir. 1980), overruled on other grounds. 287 F. 3d 866 (9th Cir. 2002).

Plaintiff is likely to prevail on its § 1114 claim, for the same reasons that it is likely to prevail on its claim under § 1125(a). New West Corp. v. NYM CO. of California, 595 F. 2d at 1201. ("The likelihood of confusion test also is used for claims of trademark infringement under 15 U.S.C. 1114.).  Since the Defendants use the federally registered mark on Infringing Merchandise and sell such goods at the very place where the Group will be performing, there can be no doubt as to the confusion and intent of the Defendants.

9

C.      **Plaintiff Will Suffer Irreparable Injury.**

The Trademark Modernization Act, effective December 18, 2021, amended 15 U.S.C. § 1116 (a) to add the following: "A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm … upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order." This reaffirmed the standard that there is a rebuttable presumption of irreparable harm in a trademark matter when the likelihood of success on the merits is shown, which was in dispute after the Supreme Court's ruling in eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 126 S. Ct. 1837, 164 L.Ed.2d 641 (2006). Plaintiff has shown above its likelihood of success on the merits of its trademark claims.

Moreover, Plaintiff has sufficiently proven imminent irreparable harm by the continuing sales by the Defendant Bootleggers and their Infringing Merchandise. Plaintiff has no control over the Infringing Merchandise or its quality, and, accordingly, will suffer a loss of goodwill due to sales of inferior Infringing Merchandise. These peddlers appear at each venue, rarely have identification or keep records of their sales. This is the very type of irreparable injury the Trademark Act seeks to stop. Holt Decl. ¶¶ 8-19. SKS Merch, LLC, 233 F. Supp. 2d at 847 (although irreparable injury is presumed once infringement is shown, "Plaintiffs have independently established that they will be irreparably harmed absent a

10

Preliminary Injunction enjoining the sale of bootleg merchandise related to Toby Keith throughout the nation.").

### D.     The Threatened Injury to Plaintiff Outweighs Potential Harm.

Plaintiff has demonstrated that the threatened injury to Plaintiff outweighs the potential harm to the Defendants. Hard Rock Cafe, 776 F. Supp. at 1463 (valuable "Hard Rock Café" logo symbolizes the goodwill connected with [plaintiff's] business and that good will should not be jeopardized by placing it in the hands of [defendants].") Any inconvenience to Defendants will be merely economic, consisting primarily of lost profits from distribution of the illegal, Infringing Merchandise (and a bond will be posted by Plaintiff). Plaintiff will be seizing only Infringing Merchandise from those Defendant Bootleggers at the concert venues. Those in active concert with, or assisting the bootlegging are also violating the Lanham Act and must be enjoined, as provided for by Rule 65.

### E.  The Public Interest Will Be Served By Issuance Of The Injunction.

Plaintiff can show that the public interest is furthered by issuance of a preliminary injunction.  Indeed, one of the essential purposes of the Lanham Act is to protect the consuming public from being misled as to the source of goods:

> While plaintiff is injured when consumers purchase [defendant's merchandise] believing it to be [plaintiff's merchandise], consumers, too are being directly victimized.  An injunction is thus in the public interest; only if the distribution of [defendant's goods] is stopped can further fraud be avoided.

Corning Glass Works v. Jeannette Glass Co., 308 F. Supp. 1321, 1328 (S.D.N.Y.), aff'd, 432 F.2d 784 (2d Cir 1970). Public interest is especially strong when a federal statute expressly forbids the conduct in question. Here, Defendants act in flagrant disregard of the laws. In sum, Plaintiff is entitled to injunctive relief.

**IV. PLAINTIFF IS ENTITLED TO EX PARTE RELIEF CONSISTING OF A TEMPORARY RESTRAINING ORDER AND A SEIZURE ORDER.**

**A. An Injunction and Seizure Order Under the Lanham Act Is Necessary To Combat Defendants' Activities.**

Courts have issued temporary restraining and seizure orders in advance of concerts to stop the sale of Infringing Merchandise. See Burns Cert. and Exhibits thereto. This procedure is specifically authorized by statute; 15 U.S.C. §1116 provides for injunctions "upon such terms as the court may deem reasonable" to prevent violations of Lanham Act. See In re Vuitton et Fils, S.A., 606 F.2d 1, 4 (2d Cir. 1979) and cases cited therein (court has inherent power to issue seizure orders); Universal City Studios, v. Kamma, 217 U.S.D.Q. 1162 (S.D. Tex. 1982).

Moreover, the Lanham Act specifically contemplates that a temporary restraining and seizure order against Infringing Merchandise may be had by ex parte application. Section 1116(d) authorizes ex parte orders where, in addition to the traditional requirements for injunctive relief: (1) an order other than an ex parte seizure order is not adequate, (2) the applicant has not publicized the requested seizure, and (3) the person against whom seizure would be ordered would destroy or

12

otherwise make inaccessible to the court the infringing matters. 15 U.S.C. §1116(d)(4)(B).

In the instant case, defendants are not yet identified by specific names, but it is clear from their activities that they will be present in this jurisdiction only long enough to sell their Infringing Merchandise, then promptly disappear. Even if Defendants received notice and were served with a proposed temporary restraining order, it is highly unlikely that they would voluntarily comply and not sell their goods. See (Holt Decl. and Burns Cert.) Simply stated, there is no other means of preventing the Defendants from destroying evidence without a seizure order.

A Court of Equity must be flexible and must be willing to issue an injunction appropriate under the particular circumstances of the case. See the All Writs Act, 28 U.S.C. § 1651 which broadly authorizes Federal Courts to issue "all writs necessary or appropriate in the aid of their respective jurisdiction and agreeable to the usages and the principles of law." Since there is no other remedy available to Plaintiff to prevent irreparable injury, this Court can order the seizure of infringing merchandise as an exercise of its inherent power to obtain and retain jurisdiction in the matter. In Joel v. Does, 499 F. Supp. 791 (E.D. Wisc. 1980), the Court stated:

> Were the injunction to be denied, Brockum would be without any legal means to prevent what is clearly a blatant infringement of their valid property rights. While the proposed remedy is novel, that in itself should not weigh against its adoption by this Court. A Court of Equity is free to fashion whatever remedies will adequately protect the rights of the parties before it. Id. at 792.

13

**B. <u>Rule 65 of The Federal Rules Of Civil Procedure And the Lanham Act Provide Authority For The Ex Parte Relief Plaintiff Seeks.</u>**

Rule 65 of the Federal Rules of Civil Procedure permits the issuance of an ex parte temporary restraining order when failure to issue such an order would result in "immediate and irreparable injury, loss, or damage," and the movant demonstrates why notice should not be required. The irreparable harm from Defendants' sale and distribution activities has been shown. Since Defendants have the temerity to conduct blatantly unlawful activities, making a business of selling infringing articles, and have an economic interest in continuing their unlawful actions, there is no reason to believe they will voluntarily stop.

The Court in <u>Vuitton</u>, <u>supra</u>, found that immediate and irreparable injury existed because of the substantial likelihood of confusion created by the itinerant Bootleggers selling their infringing goods and plaintiff had shown why notice should not be given:

> [A]lthough this Court has frowned upon temporary restraining orders issued even without telephone notice, there are occasions when such orders are to be countenanced. In our judgment, this case is just such an occasion. [***] Assuming that all of the other requirements of Rule 65 are met, the Rule by its very terms allows for the issuance of an ex parte temporary restraining order when (1) the failure to issue it would result in "immediate and irreparable injury, loss or damage" and (2) the applicant sufficiently demonstrates the reason that notice "should not be required." In a trademark infringement case such as this, a substantial likelihood of confusion constitutes, in and to itself, irreparable injury sufficient to satisfy the requirements of Rule 65(b)(1). [* * *] If notice is required, that notice all too often appears to serve only to render fruitless further prosecution of the action. This is precisely contrary to the

14

normal and intended role of notice, and it is surely not what the authors of the rule either anticipated or intended.

606 F.2d at 4-5.

### C. It Is Appropriate To Issue A TRO And Seizure Order To Enjoin Activities Of Persons Whose Identities Are Presently Unknown.

Plaintiff is proceeding to stop the bootlegging activities of Defendants whose identities are presently unknown. Courts have long recognized that known adversaries may be designated as "John Does" until plaintiff is able to specifically identify them. See SKS Merch, supra, Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971); Plaintiff need not await the consummation of the threatened injury to obtain preventive relief. Babbitt v. United Farm Workers National Union, 442 U.S. 289, 298 (1979). Indeed, any assertion to the contrary would constitute a conceptual rejection of provisional remedies available to a party who has sustained or is in immediate danger of sustaining a direct injury. Flast v. Cohen, 392 U.S. 83 (1968).

In circumstances similar to the facts herein, many federal courts have issued temporary restraining and seizure orders to enjoin various Doe Defendants from selling and otherwise commercially exploiting infringing merchandise associated with performers' tours.   In each case, an ex parte order was issued against unidentified defendants, originally designated as Does, to prevent the sale of and to

15

seize merchandise bearing the trademarks, logos and trademarks of performers represented by the plaintiff in those actions. See Burns Cert. and Exhs thereto.

In Joel v. Does, supra, the Court held that although it does not favor unknown defendants and may not have in *personam* jurisdiction, in the case of Bootleggers:

> I am convinced that the requested injunction [and seizure order] should issue in the present case. ... The problem of the defendants' identifies is met, I believe, by the fact that copies of the summons, complaint, and restraining order itself will be served on all persons from whom Billy Joel merchandise is seized on the night of the concert.  These parties will be asked to reveal their names so that they can be added as parties to the lawsuit.  [* * *] [w]ere the injunction to be denied, plaintiffs would be without any legal means to prevent what is clearly a blatant infringement of their valid property rights.

499 F. Supp. at 792.

If courts failed to recognize "Doe" Defendants, clever wrongdoers could (and will) easily conceal their true identities until a statute of limitations runs out, or, as here, they could leave Plaintiff with no practical recourse for violations of their rights. Moon Records v. Does, 217 U.S.P.Q. 39 (N.D. Ill. 1981) ("the problem regarding the identity of the defendants will be met by requiring copies of the complaint and the [order] to be served upon all persons from whom infringing merchandise is seized..."). Consistent with Fed. R. Civ. P 4(j), Plaintiff's servers will make every reasonable effort to identify the Defendants for purposes of amending the pleadings.

It has been the repeated experience of Plaintiff that most, if not all, of the Bootleggers are persons extremely experienced with selling Infringing Merchandise.

16

Most are not neophytes, but rather somewhat sophisticated businessmen who operate in stealth to thwart the legitimate rights of Plaintiff. Bootleggers travel around the country from venue to venue selling their counterfeit wares.  Many defendants even have the audacity to print the entire tour schedule of performers such as the Artist on the back of the bootleg T-shirts which they sell.  Any person found selling a shirt bearing the entire Tour schedule can fairly be said to be "aiding and abetting, or acting in active concert with," served Defendants who have sold similar shirts at other concerts.

**V.    A MULTIDISTRICT INJUNCTION AND SEIZURE ORDER ENJOINING DEFENDANTS' CONDUCT AT CONCERT VENUES IS BOTH NECESSARY AND PROPER TO PROVIDE COMPLETE RELIEF.**

### A. Courts Have Issued Multidistrict Injunctions and Seizure Orders.

It has been shown by the declaration submitted in this matter that the sale of Infringing Merchandise by the Defendants violates the Lanham Act.  Therefore, all remedies under the Act are appropriate and the multi-district relief sought has been granted in numerous cases in other jurisdictions across the country in factually the same or similar and legally identical circumstances.  See Burns Cert. and Exhibits thereto (including similar orders issued by District Courts in this State and elsewhere).

The Plaintiff's rights under the Lanham/Trademark Act in these circumstances do not vary in any respect in any state – they are applied uniformly

17

and consistently.  Defendants have no right to sell Infringing Merchandise during the Artist's Tour.  And as noted above, it is specifically authorized by statute. Section 1116 provides for enforcement and service "anywhere in the United States where [Defendants] may be found." 15 U.S.C. § 1116(a).  (See Burns Cert. and Holt Decl.)

Further, Fed.R.Civ.P. 65(d) provides that an order granting injunctive relief binds the parties and those related to them and those in active concert or participation with them who receive actual or other notice of an order even if beyond the territorial limits of the district court enjoining said activity.  See Nintendo of America v. NTDEC, 822 F. Supp. 1462, 1466, 1468 (D. Ariz. 1993) (worldwide injunction ordering defendants to deliver up infringing goods for destruction); Golden Door, Inc., v. Odisho, 437 F.Supp. 956, 968 (N.D. Cal. 1977), aff'd 646 F.2d 347 (9th Cir. 1980), rev'd  on other grs. 287 F. 3d 866 (9th Cir. 2002) ("plaintiff's market area, and hence, sphere of reputation, are nationwide. Accordingly, it is entitled to nationwide protection against confusion and dilution.  The scope of the injunction must therefore be nationwide"); The Five Platters, Inc. v. Purdie, 419 F. Supp. 372 (D. Md. 1976) ("the Lanham Act provides for nationwide enforcement of injunctions").

The propriety of such a multi-district order has long been established by numerous district courts, as explained herein and by the Fifth Circuit in Waffenschmidt v. Mackay, 763 F.2d 711 (1985).

18

> Non-parties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order.  This is so despite the absence of other contacts with the forum. [ * * *]  Courts do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender. [Federal] courts, equally with those of the state, are possessed of ample power to protect the administration of justice from being thus hampered or interfered with.

Id., at 714, 716 (citations omitted).

SKS Merch, LLC v. Barry, supra, and Plant v. Does, 19 F. Supp.2d 1316 (S.D. Fla. 1998) are the main decisions that address the issues raised in this matter. In each case, plaintiff sought nationwide injunctions and seizure orders to enforce the rights of performers during a tour. The District Court in SKS Merch, after careful review of the Plant decision, as well as other adverse decisions, granted the nationwide injunction and seizure order to seize the infringing merchandise.

The Court in SKS Merch noted that plaintiff in Plant did not identify defendants. As set forth in the Declaration and the Certificate of Counsel, Defendants will be identified when they appear conducting their unlawful activities in this District, as also demonstrated in so many other actions filed by Plaintiff.  See World Wrestling v. Unidentified Parties, 770 F. 3d 1143, 1147 (5th Cir 2014) (for seizures at performances, identification is met because although plaintiff "cannot know in advance the specific identities of counterfeiter who will present themselves

19

at any given event, …it does know that any non-affiliated seller at or near an event is almost certainly a counterfeiter.").

The harm to Plaintiff, however, is irreparable, and happens with little to no variation throughout the tour. The *SKS Merch* Court recognized the *modus operendi* of Defendant Bootleggers - that they fail to carry identification, they are aware their goods are unauthorized, and they flee when approached by authorized individuals. Id., at 849.  (See  Holt Decl. and Burns Cert.)  The Defendant Bootleggers' deception should not be rewarded.  Further, to require Plaintiff to wait further for "identification" - since the defendants usually do not provide any -- would seriously impede its and Plaintiff's rights. Although the plaintiff in SKS Merch waited for several performances before seeking relief, Plaintiff here requests that it should not wait so long; the harm is clear and irreparable, and is occurring now.  With each performance Plaintiff will be harmed, the bootlegging will continue and the only one who will gain, and gain momentum, will be the defendants.

Moreover, Plaintiff seeks to enforce *clear, uncontroverted federal trademark law*, that is uniform throughout the United States.  Plaintiff is not seeking to enforce a directive, executive order or policy, and the action is not directed against or sought by a branch of government.  The federal laws Plaintiff has applied under for its remedies are not in dispute.  Plaintiff has no cause of action under any state law.

20

And, most importantly - Defendant Bootleggers have no right to sell their Infringing Merchandise anywhere in the United States.  See Burns Cert. ¶¶ 21-23.

Further, the Supreme Court, in its recent decision in <u>Trump v. Casa,</u> citing a trademark case, specifically held that it was not barring multi-jurisdictional orders, as sought here, but rather "universal" ones. "Even a traditional, parties-only injunction can apply beyond the jurisdiction of the issuing court. <u>Steele v. Bulova Watch Co.</u>, 344 U. S. 280, 289 (1952) (When 'exercising its equity powers,' a court 'may command persons properly before it to cease  or perform acts outside its territorial jurisdiction')." <u>Trump v Casa, Inc</u>. 606 U.S. 831, 837 n 1 (2025).  See also <u>In re Google Play Store Antitrust Litigation</u>, 147 F.4th 917, 959 (9th Cir. 2025) (<u>Casa</u> clarified a restriction on "universal injunctions" but does not change that traditional injunctions can apply beyond the jurisdiction of issuing court.). Indeed, the Supreme Court in <u>Trump v Casa</u>, held that a court of equity should provide " 'complete relief' [which] is not synonymous with ' universal relief.' " It is a narrower concept, long embraced in the  equitable tradition, that allows courts to " 'administer complete relief  between the parties.' " <u>Id.</u>, 606 U.S. at 851 (citation and italics omitted).

Moreover, in <u>In Re Suicide Boy$ Trademark Litigation</u>, 796 F. Supp. 3d 1310, 1331 (N.D. GA 2025), the Court appointed law professor filed an amicus brief on

21

its jurisdiction to issue a performing artist's tour seizure order to seize infringing merchandise in other districts. The Court thereafter held:

> It would run directly counter to the express purposes of the [Trademark Counterfeiting Act] 'encourag[ing] private enforcement' and assisting courts to 'effectively exercise their jurisdiction,' S. Rep. 98-526, at 2, 7—to circumscribe the personal jurisdiction afforded by its nationwide service of process provision. The 'bad faith tactics' of counterfeiters, such as anonymous cash transactions, destruction or secretion of the counterfeit goods, and "`dumping' of counterfeit goods or transfer of counterfeit goods to unknown third parties," *Id.* at 7 can quite obviously cross district or even regional lines, particularly where the counterfeiters are operating in "networks," *Id.*    [***] Nor would it encourage private enforcement if plaintiffs were obligated to seek an *ex parte* seizure order in every district in which the allegedly counterfeit goods were present.

Id., at 1330-1331 (internal citations omitted.)

Plaintiff here does not seek a "universal" injunction - an order that can be applied to or used by similarly situated plaintiffs, or even for this Plaintiff's other tours, Plaintiff's other performers and Plaintiff's other trademarks.  The proposed orders Plaintiff seeks are narrowly tailored for use solely for itself and solely for this particular Artist's Trademarks, on specific days and at specific times of his tour, to stop only those Defendant Bootleggers who appear only where the Artist is performing. Defendant Bootleggers do not have a fixed location or keep records, and conduct their infringing activities at the Artist's concerts.  The proposed seizure order is the only proven method to provide complete relief to Plaintiff.  (See Holt Decl. ¶¶ 14-23; Burns Cert. ¶¶ 6-18.)

22

Concerns about service raised in *Plant* are addressed here as they were in *SKS Merch*; Defendants' names may be added after service has taken effect and names (preferably proper) will be provided. Because the Infringing Merchandise is the same or substantially similar from location to location, this represents a concerted effort and therefore the Defendants are on notice. Further, Defendants always have an opportunity to be heard. Local orders throughout the country will not afford Defendants any greater protection and would waste judicial resources.

**B. The Court Will Have Jurisdiction Over Defendants and Those Acting In Concert With Them.**

Once the Defendants have been served at the concerts in Minneapolis, this Court acquires personal jurisdiction over them. Fed.R.Civ.P. 4. See John Hancock Mutual, supra, 555 F. Supp. 1026 (N.D. Ill. 1983) (service of process under Rule 4 confers jurisdiction on this Court even with respect to John Doe defendants). At the preliminary injunction hearing, this Court should enjoin all the Bootlegging activities during the entirety of the Artist's tour. Absent such seizure orders – good for the entirety of the Artist's tour - complete relief here would be impossible to achieve; separate orders would have to be sought at every location on the tour to enforce Federal trademark law that is uniform throughout the United States. In addition, as noted before, 15 U.S.C. § 1116, specifically provides for enforcement of this Court's orders in other districts.

The tour seizure order will be effective against all persons involved in Defendants' Bootlegging operation.  Pursuant to Fed.R.Civ.P. 65 (d), an order granting relief will bind not only the actual named parties to an action, but also "their officers, agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of the Order by personal service or otherwise. "  See  Vuitton, Et Fils, S.A. v. Carousel Handbags, 362 F.2d 339, 344 (9th Cir. 1979) (a court may bind parties to preserve its ability to render a judgment in a case over which it has jurisdiction); McGraw Edison Co. v. Performed Line, 362 F.2d 339, 344 (9th Cir.) cert. denied, 385 U.S. 919 (1966) (non-parties may be found in contempt of an injunction if they have actual notice of the Order, and aid and abet in its violation). Thus, the Court may enjoin all participants in the Bootlegging operation of which served Defendants are members.

The Bootlegging operation to be enjoined here is a concerted action of many individuals acting together with the served Defendants.  The nature and quality of merchandise seized indicates a concerted operation.  Identical shirts are found at several locations on other tours, indicating that the Bootleggers go from one location on the tour to another to sell their merchandise.  Therefore, any relief granted to Plaintiff must continue throughout the tour and operate against these Defendants in order to be effective.   A tour seizure order against Defendants and those acting in

24

concert with them is appropriate and required if Plaintiff is to obtain complete relief from Defendants' unlawful actions. (Holt Decl. ¶¶ 12-27.)

C. **The Order Binds Those Who Participate In Defendants' Unlawful Conduct and Defendants Have An Opportunity To Be Heard.**

Each time there is a seizure pursuant to the Order, the requirement of notice to the person against whom the relief operates will be satisfied. Once the preliminary injunction is issued, it will be served on anyone selling Infringing Merchandise on the tour. They will therefore have notice of the injunction and seizure order at the concert and when their goods are seized.

Although it is not known at this time whether any Defendants will appear before the Court on the return date to oppose the requested relief, given our experience, it is doubtful that any will do so. However, they certainly have that opportunity. Plaintiff would welcome such appearances for it would permit it to identify the bootleggers, take discovery from them, discover their printing sources and pursue them for money damages. The proposed Order will provide that a person who wishes to challenge the seizure has the opportunity to file a motion with this or any other Court requesting a hearing, giving any defendant a full and fair opportunity to be heard, while preserving the critical piece of evidence. Further, to avoid a theoretical question, should any Defendant appear, Plaintiff will waive any objections to venue and transfer the action if requested. Moreover, Plaintiff will post

25

with this Court a bond, so Defendant Bootleggers always have the right to be heard and are guaranteed a source of recovery.

Without the proposed seizure order, Plaintiff will be forced to file separate civil actions throughout the United States at an estimated expense of well over $375,000 in legal fees and costs, imposing a great burden upon both Plaintiff and the judicial resources of the Federal Courts.  Thus, it would be inequitable to place such an enormous and unnecessary burden on Plaintiff whose rights are clear.  An injunction and seizure order against Defendants and those acting in concert with them is appropriate and required if Plaintiff is to obtain complete relief from Defendants' concerted unlawful acts.

## V.    CONCLUSION.

Based on the foregoing, Plaintiff respectfully requests that its application be granted in all respects.

|  |  |
|---|---|
| Dated: April 10, 2026 | Respectfully submitted,<br>STEVENS & LEE<br>By: s/ Maeve E. Cannon<br>MAEVE E. CANNON<br>100 Lenox Drive, Suite 200<br>Lawrenceville, New Jersey 08648<br>(609) 243-6423<br>maeve.cannon@stevenslee.com<br><br>Cara R. Burns (PHV to be Requested)<br>MIMS, KAPLAN, BURNS &<br>GARRETSON , 28202 Cabot Rd,#300<br>Laguna Niguel, California 92677<br>(310) 314-1721 cburns@hmkblawyers.com |

26